| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>1437 Bannock St<br>Denver, CO 80202<br><br>**PLAINTIFF:** CHRISTOPHER MORRIS, individually and on behalf of all similarly situated persons<br><br>**v.**<br><br>**DEFENDANT:** FRONTIER AIRLINES, INC. | DATE FILED<br>October 31, 2025 4:16 PM<br>FILING ID: 171EAC2AD8987<br>CASE NUMBER: 2025CV33928<br><br><br>Δ   COURT USE ONLY   Δ |
| Attorneys for Plaintiff:<br><br>Rachel Dempsey, Atty Reg. # 57708<br>Alexander Hood, Atty Reg. # 42775<br>Victoria Guzman, Atty Reg. # 55401<br>Towards Justice<br>1580 N Logan Street<br>Ste 660 PMB 44465<br>720-239-2606<br>rachel@towardsjustice.org<br>alex@towardsjustice.org<br>victoria@towardsjustice.org | Case Number:<br><br><br><br><br><br>Ctrm/Div: |
| **CLASS ACTION COMPLAINT** ||

Plaintiff Christopher Morris ("Plaintiff") by and through undersigned counsel, individually and on behalf of all others similarly situated, files this *Class Action Complaint* against Defendant FRONTIER AIRLINES, INC. ("Defendant").

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, an individual, was employed by Defendant as a pilot between February 11 and October 13, 2025.

2. Defendant is a Colorado corportation with its principal place of business in the State of Colorado.

3. Venue in this Court is proper pursuant to C.R.C.P. 98 because Defendant resides in this County.

4. This Court has jurisdiction over the parties and subject matter of this action pursuant to C.R.S. § 13-1-124 and the Colorado Constitution.

# EXHIBIT A

## FACTUAL BACKGROUND

### Defendant's TRAP

5.     Defendant owns and operates Frontier Airlines, a Denver-based airline. Defendant's fleet of aircraft is composed entirely of Airbus A320-series aircraft.

6.     Defendant requires all entry-level pilots to sign a document titled "Pilot Training Repayment Agreement" (hereinafter, "TRAP") as a condition of employment.

7.     The TRAP states that incoming pilots require "additional and initial training" in order to become "type-rated for the Airbus A320 series aircraft and properly perform the required duties of a pilot for Frontier."

8.     The TRAP claims training expenses amount to $59,190 for "ground school, simulator time and training, proficiency checks and initial operating experience."

9.     The TRAP requires all pilots to repay these expenses within 14 days if the pilots resigned or are terminated for cause within two years of beginning active or continuous service with Frontier.

10.    The $59,190 amount is pro-rated every three months a pilot works for Frontier, as follows:

| Months Employed | Reimbursement |
| --- | --- |
| 0-3 | 100% |
| 3-6 | 87.5% |
| 6-9 | 75% |
| 9-12 | 62.5% |
| 12-15 | 50% |
| 15-18 | 38.5% |
| 18-21 | 25% |
| 21-24 | 12.5% |

11.    The TRAP states that any training debt owed to Frontier can be deducted from wages, including bonuses, vacation pay, or severance pay.

12.    The TRAP contains a Colorado choice of law provision.

13.    When pilots resign from Defendant, Defendant seeks to collect the amount of purported debt remaining on the TRAP pursuant to the schedule set forth in ¶ 10, including by sending pilots an email upon resignation demanding repayment and providing payment instructions.

14. On information and belief, the purported cost breakdown for this training is as follows:

| Cost of Pilot New Hire Training | | | |
|---|---|---|---|
| | | # of events | Total |
| SIM instructor | $1,485 | 17 | $25,245 |
| SIM | $1,500 | 17 | $25,500 |
| IOE | $81 | 55 | $4,455 |
| Hotel Cost | | | $3,990 |
| | | | $59,190 |

**Defendant's Training**

15. Defendant provides the same training to all newly-hired pilots, as required by 14 C.F.R. Part 121 Subpart N ("Part 121").

16. Part 121 requires Defendant to "establish and implement a training program" that complies with federal regulations, and to receive "initial and final [Federal Aviation Administration ("FAA")] approval" of the training program in order to maintain its certification to conduct business. 14 C.F.R. § 121.401.

17. The FAA-approved training program must meet specific requirements for equipment, facilities, personnel, manuals and programs, and must include:

- Basic indoctrination training
- Emergency training
- Crew resource management (CRM) training
- Initial ground and flight training
- Upgrade ground and flight training
- Recurrent ground and flight training
- Requalification training
- Differences ground and flight training
- Transition ground and flight training
- Hazardous material (hazmat) training

18. If Defendant does not comply with the requirements of Part 121 or provide the training specified under that section, it jeopardizes its ability to conduct business.

19. Defendant's Part 121-approved training lasts approximately 14-16 weeks.

20. The training begins with two weeks of indoctrination, or "indoc," which is an introduction to Frontier's general policies and procedures. Topics covered in indoc include how to sign up for benefits and Frontier company culture.

21. Following indoc, pilots undergo ground school, which is flight-specific classroom training, and systems training, which is computer-based training specific to Airbus A320-series aircraft.

22. Once pilots have completed ground school and systems training, they begin flight simulator training. Pilots receive approximately 13-17 sessions on a flight simulator during this phase of training.

23. Pilots begin flight simulator training takes place on Flight Training Devices ("FTDs"), which are stationary flight simulators configured to imitate the exact layout of a cockpit.

24. After approximately five flights on an FTD, pilots complete an equal number of flights on full-motion simulators, which are more sophisticated flight simulators that imitate the full flight experience.

25. Following completion of approximately 10 simulator training sessions, pilots perform a proficiency check, also called a check-ride.

26. For some pilots, this portion of the training results in an Airbus A320-series type rating, which is a certification that they are required to have in order to fly Airbus A320-series planes. A type rating is not employer-specific, and remains valid if a pilot leaves the employer where they earned the type rating.

27. However, some pilots come to Defendant with an Airbus A320-series type rating already. Defendant requires these pilots to complete the same Part 121 training as pilots without Airbus A320-series type ratings, and charges these pilots the same amount under the TRAP if they leave.

28. Even for those pilots that do receive an Airbus A320-series type rating, the TRAP amount Defendant seeks to recoup from pilots for their training is not a reasonable estimate of the cost of this credential.

29. For example, according to its website, ATP, which is one of the largest and most reputable flight training schools in the country, charges $10,850 for its Airbus A320 Type Rating Program. Other flight training schools list the cost of an Airbus A320 Type Rating at anywhere from $9,000 to $15,000.

30. Following a successful check-ride, pilots complete approximately three more sessions on the full-motion simulator, which are called line-oriented evaluations ("LOEs"). LOEs teach pilots how to "fly the line" at Defendant—i.e., how to fly Frontier passengers in accordance with Frontier's specific policies and procedures.

31. Once pilots have completed their LOE, they fly their Initial Operating Experience ("IOE"), which is supervised in-aircraft time with paying customers. Generally, FAA regulations require a minimum of 25 hours and 4 cycles of takeoff and landing for IOE, although at Defendant most pilots fly IOE for approximately 60 hours.

32. After IOE, pilots are "released to the line," i.e., able to fly without additional supervision.

### Plaintiff's Experience

33. Plaintiff Christopher Morris is an airline pilot.

34. On December 17, 2024, Plaintiff received a job offer from Defendant for the position of First Officer.

35. Plaintiff signed Defendant's TRAP on January 17, 2025 as a condition of his employment.

36. He began Defendant's Part 121 training on February 11, 2025. The training proceeded on the timeline described above.

37. Prior to working at Defendant, Plaintiff was a pilot at Spirit Airlines, which also operates Airbus A320-series aircraft with an identical layout to the aircraft operated by Defendant. As a result, he already had an Airbus A320-series type rating when he began Defendant's training.

38. Nevertheless, Plaintiff underwent training that was identical to the training of his colleagues that did not yet have an Airbus A320-series type rating. Plaintiff did not have the option to train on an expedited track.

39. On March 31, 2025, Plaintiff underwent his check-ride.

40. Plaintiff performed IOE between April 25 to May 24.

41. Released to the line on May 24.

42. On October 13, 2025, Plaintiff resigned from his employment with Defendant.

43. On October 16, 2025, Plaintiff received an email from an employee of Defendant named Rebecca Albert tiled "Subject: Frontier Training Repayment C. Morris."

44. The email stated: "Since you have signed the Training Repayment Agreement and did not fulfill the length of the 2-year commitment, we are asking you pay the prorated amount back." The email demanded $44,392.50 and provided repayment information via check and electronic transfer.

### CLASS ACTION ALLEGATIONS

45. Defendant employed Plaintiff and those similarly situated.

46. Defendant had the power to hire and fire and supervised and controlled work schedules and conditions of employment for Plaintiff and those similarly situated. This includes determining work schedules and supervising day-to-day work.

47. Defendant determined the rate and method of pay and maintained employment records for Plaintiff and those similarly situated. This includes issuing payroll and maintaining payroll records.

48. This is a C.R.C.P. 23 class action on behalf of Plaintiff and a Class for which Plaintiff seeks certification. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

**ALL OF DEFENDANT'S PILOTS THAT SIGNED THE TRAINING REPAYMENT AGREEMENT WITHIN THE APPLICABLE STATUTE OF LIMITATIONS**

49. This action is properly brought as a class action for the following reasons:

   a. The Class is so numerous that joinder of all Class Members is impracticable.

   b. Numerous questions of law and fact regarding the liability of Defendants are common to the Class and predominate over any individual issues which may exist.

   c. Although the exact amount of damages may vary among Class Members, the damages for the Class Members can be easily calculated by a simple formula. The claims of all Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all Class Members.

   d. The claims asserted by Plaintiff are typical of the claims of Class Members and the Class is readily ascertainable from Defendant's records. Plaintiff was subjected to the same rules and policies as all other workers that form the basis of the alleged violation. Defendant applied its policies to Plaintiff just as it did with all Class Members.

   e. Plaintiff will fairly and adequately protect the interests of Class Members. The interests of Class Members are coincident with, and not antagonistic to, those of Plaintiff. Plaintiff is committed to this action and has no conflict with the class members. Furthermore, Plaintiff is represented by experienced class action counsel.

   f. Questions of fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

## FIRST CLAIM FOR RELIEF
### (Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*.)

50. Plaintiff incorporates by reference all paragraphs above.

51. Pursuant to C.R.S. § 8-4-109(3)(a), this Complaint is a demand for wages on behalf of Plaintiffs and the Class as defined above, *i.e.*, a "demand for the payment on behalf of … a group of similarly situated employees…"

52. At all material times, Defendant has been an "employer" within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*.

53. At all material times, Defendant employed "employees," including Plaintiff and Class Members, within the meaning of the Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*.

54. As a result of the foregoing conduct, as alleged, Defendant failed to pay wages due thereby violating, and continuing to violate, the Colorado Wage Claim Act. These violations were committed knowingly, willfully and with reckless disregard of applicable law.

55. As a result, Plaintiff has been damaged in an amount to be determined at trial.

56. Plaintiff and the Class Members are entitled to all unpaid wages under various provisions of the statute, *e.g.*, C.R.S. §§ 8-4-103, -109, -110, as well as other compensatory damages, including damages for emotional distress, and penalties.

57. Plaintiff and the Class members are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court.

## SECOND CLAIM FOR RELIEF
### (Unlawful Restrictive Covenant / Training Repayment Agreement, C.R.S. § 8-2-113)

58. Plaintiff incorporates by reference all paragraphs above.

59. At all material times, Defendant has been an "employer" within the meaning of C.R.S. § 8-2-113 and the Colorado Wage Act.

60. At all material times, Defendant employed Plaintiff and Class Members as "employees" within the meaning of C.R.S. § 8-2-113.

61. Defendant required Plaintiff and Class Members to enter into, or was otherwise party to, a training repayment agreement that required repayment of purported "training costs" if the employee separated employment within a specified period.

62. The terms of Defendant's training repayment agreement constituted a non-compete

agreement **or** non-compete-in-effect agreement within the meaning of C.R.S. § 8-2-113(2)(a), because they imposed a financial penalty on employees for terminating their employment and seeking work elsewhere.

63. The training repayment agreement did not fall within any statutory exception under C.R.S. § 8-2-113(3), including the limited exception for the recovery of reasonable training costs for training that was distinct from normal, on-the-job training.

64. Instead, Defendant's training repayment provisions were primarily designed to restrain employee mobility and competition, and therefore were void and unlawful under C.R.S. § 8-2-113.

65. Defendant's use, enforcement, and threats of enforcement of the unlawful training repayment agreement violated C.R.S. § 8-2-113(4), which prohibits employers from entering into, presenting, or attempting to enforce void non-compete agreements.

66. As a result of Defendant's unlawful conduct, Plaintiff and Class Members suffered damages, including but not limited to withheld wages, coerced payments, and loss of employment opportunities.

67. Defendant's violations were committed knowingly and willfully.

68. Plaintiff and Class Members are entitled to relief including damages, restitution of any amounts unlawfully collected or withheld, statutory penalties, attorney's fees, costs, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

69. Plaintiff demands a trial by jury as to all issues so triable.

## OTHER ALLEGATIONS

70. Plaintiff's claim is a good faith, non-frivolous claim filed for the express purpose of extending, limiting, modifying, or reversing existing precedent, law, or regulation; or for the express purpose of establishing the meaning, lawfulness, or constitutionality of a law, regulation, or United States or state constitutional right and the meaning, lawfulness, or constitutionality has not been determined by the Colorado Supreme Court, or for cases presenting questions under the United States constitution, to the Supreme Court of the United States. In particular, Plaintiff brings claims, as a matter of first impression, to determine whether Defendant's TRAP violates the provisions of Colorado law specified above.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

1. Determining that the action is properly maintained as a class action, certifying Plaintiff as the class representative, and appointing Plaintiff's counsel as counsel for Class Members;

2. Ordering prompt notice of this litigation to all potential Class Members;

3. Awarding Plaintiff and Class Members their compensatory damages, attorney's fees and litigation expenses as provided by law;

4. Awarding Plaintiff and Class Members their pre-judgment, post-judgment and moratory interest as provided by law;

6. Awarding Plaintiff and Class Members statutory penalties as provided by law; and

7. Awarding Plaintiff and Class Members such other and further relief as the Court deems just and proper.

Respectfully submitted this 31st day of October, 2025.

*s/Alexander Hood*
_____

TOWARDS JUSTICE
Rachel Dempsey, Atty Reg. #57708
Alexander Hood, Atty Reg. # 42775
Victoria Guzman, Atty Reg. # 55401
1580 N Logan Street
Ste 660 PMB 44465
720-239-2606
rachel@towardsjustice.org
alex@towardsjustice.org
victoria@towardsjustice.org

*Counsel for Plaintiff*