**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-03912-NYW-KAS

CHRISTOPHER MORRIS, individually and on behalf of all similarly situated persons,

Plaintiff,

v.

FRONTIER AIRLINES, INC.,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Plaintiff's Motion for Remand to State Court Pursuant to 28 U.S.C. § 1447 (the "Motion for Remand"), [Doc. 27], and Defendant's Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) (the "Motion to Dismiss"), [Doc. 14; Doc. 14-1]. Both motions are fully briefed. *See* [Doc. 28; Doc. 30; Doc. 31; Doc. 37]. Because the Court finds that Plaintiff lacks Article III standing, it respectfully **GRANTS in part and DENIES in part** the Motion to Dismiss, **DENIES as moot** the Motion for Remand, and **REMANDS** the case to state court.

## BACKGROUND

The following facts are drawn from the Class Action Complaint ("Complaint"), [Doc. 4], and are taken as true for the purposes of these instant Motions. Plaintiff Christopher Morris ("Plaintiff" or "Mr. Morris") filed suit against Defendant Frontier Airlines, Inc. ("Defendant" or "Frontier") in Colorado state court in October of 2025. [*Id.*]. Mr. Morris is an airline pilot who was employed by Frontier between February 11 and October 13, 2025. [*Id.* at ¶¶ 1, 33]. As a condition of his employment, prior to starting work at

Frontier, Mr. Morris signed a document from Frontier titled "Pilot Training Repayment Agreement"[1] (the "TRAP"). [*Id.* at ¶¶ 6, 35]. The TRAP states that incoming pilots are required to undergo additional training, and that training is valued at a maximum of $59,190. [*Id.* at ¶¶ 7–8]. Frontier covers the cost of this training, but if a new pilot resigns or is terminated for cause within two years of beginning employment with Frontier, the TRAP requires the pilot to repay Frontier for the training, prorated according to the amount of months the pilot was employed. *See* [*id.* at ¶¶ 8–10].

Mr. Morris completed his training on May 24, 2025. [*Id.* at ¶ 41]. About five months later, on October 13, 2025, Mr. Morris resigned from Frontier. [*Id.* at ¶ 42]. A few days after his resignation, Mr. Morris received an email from a Frontier employee "asking [him] [to] pay the prorated amount back" for the training that he received. [*Id.* at ¶¶ 43–44]. The prorated amount, according to the email, was $44,392.50. [*Id.* at ¶¶ 44].

This suit followed. Mr. Morris asserts two claims for relief: (1) that Frontier "failed to pay wages due" in violation of the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 ("CWCA"); and (2) that the TRAP "constituted a non-compete agreement or non-compete-in-effect agreement" that is "void and unlawful under" Colo. Rev. Stat. § 8-2-113. [*Id.* at ¶¶ 50–68 (emphasis omitted)]. He brings these claims on behalf of a class of "all of Defendant's pilots that signed the [TRAP] within the applicable statute of limitations." [*Id.* at ¶ 48 (emphasis omitted)].

Frontier removed the case to federal court on December 5, 2025, on the grounds

[1] In the Complaint, Plaintiff identified this document as "'Pilot Training Repayment Agreement' (hereinafter, 'TRAP')." [Doc. 4 at ¶ 6]. But in the Motion for Remand, Plaintiff identifies this document as a "'Training Repayment Agreement Provision' ('TRAP')." [Doc. 27 at 3]. In its Motion to Dismiss, Frontier refers to the agreement as the "Pilot Training Repayment Agreement." [Doc. 14-1 at 3].

that "this Court possesses original jurisdiction pursuant to the Class Action Fairness Act of 2005 ('CAFA')" and that Plaintiff's second claim for relief "necessarily presents a substantial federal question within the meaning of 28 U.S.C. § 1331." [Doc. 1 at 2]. Shortly after removal, on December 12, 2025, Frontier filed its Motion to Dismiss, arguing that the Court lacks subject matter jurisdiction over the case. [Doc. 14-1]. Specifically, Frontier contends that (1) Mr. Morris lacks standing because he has not alleged any injury in fact, and (2) the claim pursuant to the CWCA is preempted by the Railway Labor Act. [*Id.* at 1].

A month after Frontier filed its Motion to Dismiss, on January 13, 2026, Mr. Morris filed the Motion for Remand, arguing that this case cannot be properly removed under either CAFA or federal jurisdiction grounds. [Doc. 27]. Mr. Morris also contends that Frontier cannot meet its burden to show federal jurisdiction, as is necessary for removal, given that it moved to dismiss on the grounds of lack of subject matter jurisdiction. [*Id.* at 1].

## LEGAL STANDARD

### I. Subject Matter Jurisdiction

Federal courts are ones of limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Consequently, federal courts "may only hear cases when empowered to do so by the Constitution and by act of Congress." *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) (quotation omitted). "[S]ubject-matter jurisdiction is a constitutional prerequisite

to hearing a case" and therefore "'can never be forfeited or waived.'" *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

## II. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions to dismiss under Rule 12(b)(1) take one of two forms: a facial attack or a factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Id.* Factual attacks go "beyond the allegations in the complaint and adduce[] evidence to contest jurisdiction." *Id.* When a party brings a factual attack, the district court enjoys "wide discretion" to allow affidavits and other evidence outside the complaint in order to resolve disputed jurisdictional facts. *Id.* (quotation omitted).

## ANALYSIS

The Motion to Dismiss and Motion for Remand come before the Court in an unusual posture. As the removing party, Frontier invoked CAFA and federal question jurisdiction. [Doc. 1 at 2–3]. But Frontier also argues in its Motion to Dismiss that Mr. Morris lacks Article III standing to assert his claims and his CWCA claim is preempted by federal law. [Doc. 14-1 at 1]. Standing is an element of subject matter jurisdiction. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000); *see also Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction."). "So, in effect, Defendant is both simultaneously invoking and challenging the Court's subject matter jurisdiction over Plaintiff's claims." *Arnett v. UCH-MHS*, No.

24-cv-00152-GPG-MDB, 2024 WL 5467462, at *2 (D. Colo. Apr. 24, 2024). But the party invoking jurisdiction, in this case Frontier, generally bears the burden of establishing that this Court has jurisdiction over the case. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). And Mr. Morris, rather than simply agreeing to remand, contests Frontier's lack-of-standing and preemption arguments—while in the same breath moving for remand on other grounds. [Doc. 28 at 6–16; Doc. 27].

As an initial matter, the Court determines that it can address the Parties' challenges to its subject matter jurisdiction in any order. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1229 (10th Cir. 2004) ("We may address jurisdictional issues in any order we find convenient."); *cf. Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 66–67 (1997) (determining the issue of mootness before standing because both go to Article III jurisdiction, not the merits of the case).

Next, the Court notes that the Tenth Circuit apparently has not addressed this particular conundrum or the associated burdens allocated to the Parties. In analogous circumstances where a defendant removed a case to federal court and then moved to dismiss based on lack of standing, the First Circuit considered standing and assigned the burden to establish standing to the plaintiff. *See Plazzi v. FedEx Ground Package Sys., Inc.*, 52 F.4th 1, 7 (1st Cir. 2022). The Seventh Circuit took a different approach, holding that the burden rested upon the removing party to establish subject matter jurisdiction before removal was proper, including Article III standing. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018). While this Court is more persuaded that the plaintiff should bear the burden of establishing standing once challenged, it ultimately need not resolve this issue because the Court has an independent obligation to consider its own

subject matter jurisdiction, *see City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017), and "[i]f at any time before final judgment it appears that [it] lacks subject matter jurisdiction," it must remand the case, 28 U.S.C. § 1447(c); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 28 (2025).

The Court now turns to considering the issue of standing substantively.

## I. Standing

There are three constitutional requirements for standing: (1) "the plaintiff must have suffered an injury in fact" that is concrete, particularized, and actual or imminent; (2) there must be a "causal connection" between that injury and the alleged conduct; and (3) it must be likely that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations omitted); *Roe No. 2 v. Ogden*, 253 F.3d 1225, 1228–29 (10th Cir. 2001). "This is no less true with respect to class actions than with respect to other suits": "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quotation omitted). Standing must be established for each claim separately. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).

Frontier contests all three elements of standing in its Motion to Dismiss and argues that Plaintiff lacks standing on both of his claims. *See* [Doc. 14-1 at 6–16].

### A. Claim One: Colorado Wage Claim Act

To establish injury in fact, Plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent,

not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation omitted). In the Complaint, Mr. Morris alleges that "Defendant failed to pay wages due thereby violating, and continuing to violate, the [CWCA]." [Doc. 4 at ¶ 54]. But, as Frontier argues, [Doc. 14-1 at 7–8], nowhere in the Complaint does Mr. Morris allege that Frontier refused to pay his wages or that Frontier made any deductions from his wages, *see* [Doc. 4]. The most that Mr. Morris alleges is that after he resigned from Frontier, he received an email from Frontier "asking [him to] pay the prorated amount back" pursuant to the TRAP. [*Id.* at ¶ 44]. He does not, however, allege that he paid back any money to Frontier or that anything else has happened to him as a result of his resignation. *See* [*id.*]. Indeed, Mr. Morris acknowledges as much in his response brief. *See* [Doc. 28 at 6 (characterizing this case as one "involv[ing] an alleged debt that has not been paid")].

Mr. Morris's only argument in response is that Frontier threatened "imminent collection or litigation," and such conduct is sufficient to confer standing. [*Id.* (emphasis omitted)]. Mr. Morris first contends that Frontier's email "demanding repayment of $44,392.50 under the TRAP" is "sufficient to establish injury." [*Id.* at 7–8]. The Court respectfully disagrees. There are no allegations in the Complaint that Frontier threatened collection or legal action; instead, Mr. Morris alleges that Frontier merely "*ask[ed]*" him to repay a portion of the value of the training. *See* [Doc. 4 at ¶ 44 (emphasis added)]. And there are no allegations that when Mr. Morris did not pay Frontier, Frontier took any other steps toward collection or litigation. *See* [*id.*]. This lack of allegations distinguishes this case from the cases that Mr. Morris cites in support of his argument, all of which involve the defendant sending collection letters and threatening or initiating legal action. *See* [Doc. 28 at 6–7 (first citing *Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 383

(M.D.N.C. 2015) (defendant "hired a law firm that has sent [the plaintiff] collecting letters, demanding payment . . . and threatening legal action if payment was not made"), and then citing *Su v. Advanced Care Staffing, LLC*, 733 F. Supp. 3d 119, 129 (E.D.N.Y. 2024) (defendants sent a letter to employee "threatening to seek damages . . . if he followed through with his resignation" and later "initiated arbitrations" against former employees))].

Mr. Morris next attempts to bring in evidence from outside the Complaint: a declaration from Plaintiff averring that, after Frontier filed its Motion to Dismiss, Frontier sent emails to certain former pilots asking for payment and stating that the next step would be a demand letter from Frontier's legal department. [Doc. 28 at 8]; *see also* [Doc. 28-3; Doc. 28-4]. But because Frontier brings only a facial attack regarding standing in its Motion to Dismiss, and there are no allegations regarding this declaration in the Complaint, the Court does not consider this evidence.[2] Even if the Court considered this declaration, it would not change the analysis, because Mr. Morris does not claim that he himself received a threatening letter from Frontier. *See* [Doc. 28-3 at ¶ 2 (declaring only that "several of [his] former colleagues" received the additional letter from Frontier stating that if they do not respond, they will receive a demand letter)]; *Lewis*, 518 U.S. at 357 ("[N]amed plaintiffs who represent a class must allege and show that they personally have

---

[2] District courts may only consider documents outside of the complaint raised in a response to a Rule 12(b)(1) motion to dismiss if the motion itself does so. *Colo. Contractors Ass'n v. City & Cnty. of Denver*, No. 21-cv-02663-CMA-STV, 2022 WL 344893, at *3 (D. Colo. Feb. 4, 2022) ("Because Denver expressly raises a facial attack on jurisdiction, the Court may not look beyond the Amended Complaint and presumes the allegations therein to be true." (citing *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 914 (10th Cir. 2013))). While Frontier makes a factual attack in its Motion to Dismiss by raising evidence outside the Complaint, that attack arises exclusively under Frontier's argument regarding preemption, not under its argument about standing. *See* [Doc. 14-1 at 17 n.4]. Accordingly, the Court treats Frontier's standing arguments as a facial attack.

been injured, not that injury has been suffered by other . . . members of the class . . . ."); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (observing that "at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" (quotation omitted)), *abrogated in part on other grounds by Bowen v. Kendrick*, 487 U.S. 589 (1988).

Accordingly, the Court finds that Mr. Morris has alleged no concrete injury for his claim under the CWCA and therefore lacks Article III standing for this claim.

**B. Claim Two: Unlawful Restrictive Covenant**

Mr. Morris's second claim is that the TRAP constitutes "a non-compete agreement or non-compete-in-effect agreement" which is prohibited by Colorado Revised Statutes Section 8-2-113. [Doc. 4 at ¶¶ 58–68 (emphasis omitted)]. This statute grants employees a cause of action if they were "harmed by an employer's conduct" as it relates to entering into, presenting, or attempting to enforce a void non-compete agreement. Colo. Rev. Stat. § 8-2-113(8)(b). But as Frontier points out, there is "an important difference" between a mere statutory cause of action and "a plaintiff's suffering concrete harm" due to the statutory violation. [Doc. 14-1 at 14–15 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021))]. "[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427. A harm is concrete when it has "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425.

Mr. Morris acknowledges this and responds that "[f]ew harms have as deep a

history in the common law as the harm imposed by an unlawful non-compete agreement." [Doc. 28 at 11]. He argues that the fact that he was deprived of the statutory right to be free from unlawful non-compete agreements is the type of traditional harm that confers Article III standing. [*Id.* at 12]. But this is the exact type of "injury in law" that the Supreme Court has explained does not, on its own, equate to an injury in fact.

Further, Mr. Morris's argument is unsupported by any citations to the Complaint that state a concrete harm—nor are there are any such allegations upon review. While Mr. Morris alleges that as a result of the TRAP, "Plaintiff and Class Members suffered damages, including but not limited to withheld wages, coerced payments, and loss of employment opportunities," [Doc. 4 at ¶ 66], the Complaint is devoid of any facts to allow a factfinder to conclude that Mr. Morris has suffered any withheld wages, coerced payments, or loss of employment opportunities. Indeed, Mr. Morris admits that he has not suffered any monetary damages, *see* [Doc. 28 at 6 (conceding that this case "involve[s] an alleged debt *that has not been paid*" (emphasis added))], and the Complaint states no facts regarding him suffering a "loss of employment opportunities" because of the TRAP. Again, the only allegation regarding harm is that Mr. Morris received a single email that "ask[ed]" him to repay Frontier for a portion of his training. *See* [Doc. 4 at ¶ 44]. And that is plainly insufficient to state a concrete harm.

Because the Complaint does not contain any allegations of an injury in fact as to either of Mr. Morris's claims, the Court finds that Plaintiff lacks Article III standing and does not address the other elements of standing. The Motion to Dismiss is therefore

respectfully **GRANTED** to the extent that it argues that Plaintiff lacks Article III standing.

## II. Remand

Because Plaintiff lacks standing, this Court does not have subject matter jurisdiction over this case. It thus cannot continue to consider the merits of the instant Motions, grant Plaintiff leave to amend the Complaint as he requests, or dismiss the Complaint as Defendant requests. *See Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." (quotation omitted)); *see also Collier*, 889 F.3d at 897. Instead, this case must be remanded pursuant to 28 U.S.C. § 1447(c).[3] The Motion to Dismiss is respectfully **DENIED** to the extent that it requests dismissal. All remaining pending motions, including the Motion for Remand, are respectfully **DENIED as moot**.

## CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1) The Motion for Remand to State Court Pursuant to 28 U.S.C. § 1447, [Doc. 27], is **DENIED as moot**;

(2) Defendant's Motion to Dismiss Plaintiff's Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1), [Doc. 14], is **GRANTED in part and DENIED in part**;

(3) This case is **REMANDED** to the District Court for Denver County, Colorado,

---

[3] Mr. Morris requests in the Motion for Remand that this Court award Plaintiff "fees, costs, and expenses" pursuant to 28 U.S.C. § 1447(c) because Defendant has "tried to have it both ways by asserting, then immediately disavowing, federal jurisdiction." [Doc. 27 at 9]. But this District's Local Rules require that fee requests be made by separate motion. *See* D.C.COLO.LCivR 54.3. A fee award is thus inappropriate at this juncture.

where it was originally filed; and

(4) The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED: August 19, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge